UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEDA NORTH AMERICA, INC.,

    Plaintiff,

    v.                                                     Case No. 19-CV-429

LORENZO ANGELUCCI,

    Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JOINDER OR ALTERNATIVELY FOR DISMISSAL

Seda North America, Inc. ("Seda NA") sues its former employee, Lorenzo Angelucci, for breach of a severance agreement entered into by the parties on or around June 30, 2017. (Docket # 1.) Angelucci has counterclaimed against Seda NA, alleging breach of the same severance agreement. (Docket # 8.) Currently before me is Angelucci's motion to require joinder of Seda UK, Ltd. ("Seda UK"), an affiliate of Seda NA, and Seda International Packaging Group, S.p.A. ("Seda International") (collectively "Seda Group"), the parent company. (Docket # 7.) Angelucci alternatively moves for dismissal of the complaint if joinder is not feasible. (*Id.*) For the reasons explained below, Angelucci's motion is denied.

## BACKGROUND

Seda NA, a Wisconsin corporation located in Mt. Pleasant, Wisconsin, is a leader in developing effective solutions for a broad range of packaging applications, including packaging for food and beverages for many nationwide restaurants and retailers. (Compl. ¶ 1.) Seda NA is fully owed by Seda International and has a number of affiliates worldwide,

including Seda UK. (*Id.* ¶ 2.) Angelucci is an Italian citizen currently residing in the United Kingdom. (*Id.* ¶ 3.) Over the course of twenty-one years, Angelucci worked for various Seda entities. (*Id.*) In 1996, Angelucci began working for Seda International as a Group Quality Assurance Manager. (*Id.* ¶ 7.) In 2002, he became the Managing Director of Seda UK. (*Id.*) In 2016, Angelucci became the Managing Director of Seda NA. (*Id.*) And from February 10, 2017 until June 30, 2017, he served as the Group Merger and Acquisition Vice President of Seda NA. (*Id.* ¶ 3.)

As a Managing Director of Seda UK and Seda NA, Angelucci was entrusted with the Seda Group's proprietary and confidential information. (*Id.* ¶¶ 8–9.) As a condition of having access to this sensitive information as a Managing Director, Angelucci was required to enter into an Executive Employment Agreement, containing various restrictive covenants. (*Id.* ¶ 10.) Angelucci's employment with Seda NA ended effective June 30, 2017. (*Id.* ¶ 14.) Upon leaving Seda NA, Angelucci entered into a Severance Agreement containing additional restrictive covenants, including confidentiality obligations. (*Id.* ¶ 10 and Ex. 1.) In consideration for receiving severance payments totaling $173,007.00, as well as payment of his relocation costs amounting to $48,077.44, Angelucci executed the Severance Agreement whereby he promised that for a period of two years he would not use for his own benefit or any third party's benefit any confidential information of Seda NA or the Seda Group. (*Id.*) Section 9 of the Severance Agreement encapsulates the restriction against the use of the "Confidential Information" belonging to Seda NA or its affiliates for the benefit of Angelucci or any third party. (*Id.* ¶ 12.)

In November 2017, Seda UK became aware that Angelucci set up Transcend Packaging Ltd, an allegedly competing company located in the United Kingdom. (*Id.* ¶¶ 3,

15.) Seda NA alleges that it later learned that Angelucci was improperly using, and continues to use, Seda Group's confidential personnel information to solicit and recruit various Seda UK personnel to work for Transcend. (*Id.* ¶¶ 16–17.) Seda NA further alleges that as Managing Director of Transcend, a direct competitor of Seda Group, Angelucci is improperly benefitting from Seda Group's proprietary information that he learned while he was the Managing Director at Seda NA. (*Id.* ¶ 23.) Seda NA alleges that Angelucci seeks to improperly build Transcend's business by sharing with his new company proprietary information belonging to Seda Group, including, but not limited to, information about Seda Group's customers, financial information, information regarding potential acquisitions, information regarding suppliers, and information regarding personnel. (*Id.*) Seda NA alleges that on January 25, 2018, Seda Group sent a letter to Angelucci notifying him of his obligations under the Severance Agreement and demanding that he cease violating his confidentiality obligations, to no avail. (*Id.* ¶¶ 18–22.)

Seda NA alleges a single cause of action against Angelucci—breach of contract for allegedly breaching Section 9 of the Severance Agreement regarding confidentiality restrictions. (*Id.* ¶¶ 24–30.) Seda NA seeks return of all consideration it paid to Angelucci pursuant to the Severance Agreement, as well as attorneys' fees and costs pursuant to Section 15 of the Severance Agreement. (*Id.* ¶¶ 25–26, 30.)

Angelucci counterclaims against Seda NA, alleging that Seda NA agreed to pay Angelucci $225,000.00 under the Severance Agreement, but only paid $173,000.00. (Counterclaim ¶¶ 4–12.) Angelucci seeks damages no less than $52,000.00 plus attorneys' fees and costs, for Seda NA's alleged breach of the Severance Agreement. (*Id.* ¶¶ 11–12.)

Although several allegations in Seda NA's complaint reference Seda UK and Seda International, neither entity is a party to this action. Angelucci asserts that both Seda UK and Seda International are necessary parties to this action and thus must be joined pursuant to Fed. R. Civ. P. 19. Alternatively, if joinder is not feasible, Angelucci moves for dismissal pursuant to Fed. R. Civ. P. 19(b) and 12(b)(7).

**LEGAL STANDARDS**

This action invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Seda NA is a Wisconsin corporation with its principal place of business in Wisconsin and Angelucci is an Italian citizen residing in the United Kingdom. The amount in controversy exceeds $75,000.00. (Compl. ¶¶ 1, 3–4.) The Federal Rules of Civil Procedure therefore govern the standard under which Angelucci's motion is evaluated while Wisconsin law governs the construction of the relevant contracts, pursuant to the Severance Agreement's choice of law provision. (Compl., Ex. 1 ¶ 17.) *See Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014) ("Stated in the broadest of strokes, the *Erie* doctrine provides that 'federal courts sitting in diversity apply state substantive law and federal procedural law.'") (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

Angelucci moves to join Seda UK and Seda International pursuant to Fed. R. Civ. P. 19)(a). "The purpose of Rule 19 under the Federal Rules of Civil Procedure is 'to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). Joinder under Rule 19 is a two-step inquiry:

> First, the court must determine whether a party is one that should be joined if feasible—called, in the old days, a "necessary party." Fed. R. Civ. P. 19(a);

4

> *Hall*, 100 F.3d at 478 . . . . [I]f the court concludes . . . that the party should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence. *See* Fed. R. Civ. P. 19(b). If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as "indispensable" and the action is subject to dismissal upon a proper motion under Federal Rule of Civil Procedure 12(b)(7).

*Id.* at 481 (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). In determining whether one is a necessary party, the court must consider: (1) whether complete relief can be accorded without joinder, (2) whether the nonparty's ability to protect its interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless the non-party is joined. *Id.*; Fed. R. Civ. P. 19(a). If, however, a necessary party cannot be joined (because, for example, it would deprive the court of jurisdiction), then the court must determine, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); Fed. R. Civ. P. 12(b)(7). *See also Krueger v. Cartwright*, 996 F.2d 928, 933 (7th Cir. 1993). In making this determination, the court should consider the following factors: the extent to which a judgment rendered in the nonparty's absence might prejudice that person or the existing parties; the ability of the court to fashion a remedy to limit any prejudice; whether a judgment rendered in the nonparty's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

A motion under Rule 12(b)(7) seeks dismissal based on the failure to join a necessary party as required by Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7). A Rule 12(b)(7) motion to dismiss requires the court to accept the allegations in the complaint as true, but the court may consider extrinsic evidence beyond the pleadings. *Ochs v. Hindman*,

984 F. Supp. 2d 903, 906 (N.D. Ill. 2013). On a Rule 12(b)(7) motion, the movant bears the burden of demonstrating that the absent party is a necessary and indispensable party that must be joined. *Id.*

## ANALYSIS

Angelucci argues that both Seda UK and Seda International are necessary parties pursuant to Rule 19(a). Angelucci argues that Seda NA's complaint alleges that Angelucci improperly solicited and recruited Seda UK personnel; thus, only Seda UK could possibly claim damages for this allegation. (Def.'s Br. at 4, Docket # 7.) Angelucci argues that the complaint does not allege he is specifically competing with Seda NA and does not link the allegations regarding Angelucci's conduct to damages specific to Seda NA. (*Id.*) Angelucci further argues that a ruling in his favor against Seda NA would still leave him at risk of incurring double, multiple, or otherwise inconsistent obligations as to Seda UK and Seda International. (*Id.* at 5.) Seda NA argues, however, that the complaint alleges only one cause of action—a breach of contract (i.e., the Severance Agreement) between Seda NA and Angelucci. (Pl.'s Resp. at 4, Docket # 14.)

Seda NA argues that neither Seda UK nor Seda International are parties to the Severance Agreement and Seda NA is not seeking damages for breach of a non-competition provision of any agreement. (*Id.* at 5.) Rather, Seda NA seeks return of the "hundreds of thousands of dollars it paid Angelucci in exchange for the confidentiality obligations he breached." (*Id.*) Seda NA further argues that complete relief can be awarded without Seda UK or Seda International's presence because the Court can award Seda NA the return of its consideration paid pursuant to the Severance Agreement and/or damages due to Angelucci

for Seda NA's alleged breach of the Severance Agreement pursuant to the counterclaim. (*Id.* at 6.)

Angelucci has failed to demonstrate that Seda UK and Seda International are necessary parties to this action. Angelucci seems to misunderstand the nature of Seda NA's complaint. Seda NA seeks damages for breach of the Severance Agreement—a contract between Seda NA and Angelucci. Angelucci does not dispute that neither Seda UK nor Seda International are parties to this particular contract. Nor does Angelucci assert that anyone but Seda NA paid him the alleged consideration for entering into the Severance Agreement. Seda NA does not assert, contrary to Angelucci's perceived misconception, breach of a non-compete agreement. Thus, it is unclear why either Seda UK or Seda International are necessary parties to this particular action. Complete relief can be accorded without them. Either Seda NA or Angelucci could be awarded damages for breach of the Severance Agreement without the presence of Seda UK or Seda International as parties to the action. In fact, because neither Seda UK nor Seda International paid Angelucci consideration for signing the Severance Agreement, they have no authority under which to request its return. Thus, it is unclear how Angelucci could be subjected to a substantial risk of multiple or inconsistent obligations when neither Seda UK nor Seda International are parties to the Severance Agreement.

Angelucci's true concern, it seems, is that other members of the Seda Group may have potential causes of action against him based on his alleged actions since separating from Seda NA. For example, the complaint alleges that Angelucci entered into an Executive Employment Agreement containing various restrictive covenants. (Compl. ¶ 10.) Section 6(g) of the Severance Agreement seems to indicate that Angelucci signed a "Confidentiality,

Non-Compete, Non-Solicitation and Assignment of Business Ideas Agreement dated 03.01.2016." (Compl., Ex. 1.) I do not know, however, who signed either the Executive Employment Agreement or the Confidentiality, Non-Compete, Non-Solicitation and Assignment of Business Ideas Agreement. It is true that the Severance Agreement at issue at section 6(g) provides that non-compliance with the March 1, 2016 Agreement gives Seda NA the right to cease paying severance pay and requires Angelucci to pay back any amounts of severance pay already paid. (Compl., Ex. 1.) But that does not mean, as Angelucci argues, that Seda NA's breach of contract case is not really a breach of contract case because its claims against Angelucci "depend on whether the alleged confidential [sic] of Seda UK or Seda International Packaging Group is actually confidential to those non-parties and whether Angelucci actually used any of the alleged information." (Def.'s Reply Br. at 1–2, Docket # 15.) While violation of a non-compete or some other agreement may be relevant to Seda NA's breach of contract claim, it does not, however, make Seda UK, Seda International, or any other Seda entity a necessary party to this case. *See Davis Co.*, 268 F.3d at 484 ("'When a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract.'") (quoting 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure Civil 3d*, § 1613 at 197 (2001)).

Further, while Angelucci speaks to the concern that *his* interests could be impaired because Seda UK and Seda International could possibly bring claims against Angelucci (Reply Br. at 3), Angelucci does not address whether Seda UK and Seda International's

ability to protect their interests will be impaired without joinder, as required by Rule 19(a). In short, the fact that Seda UK and/or Seda International may possibly have a different cause of action against Angelucci under a different agreement (albeit arising out of the same circumstances) does not make them necessary parties to this action. Angelucci has failed to meet his burden of showing that Seda UK and Seda International are necessary parties pursuant to Rule 19(a). Because Angelucci has failed to meet his burden under Rule 19(a), I need not examine the factors articulated in Rule 19(b). *See Davis Co.*, 268 F.3d at 485. Angelucci's motion is denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for joinder or in the alternative, to dismiss (Docket # 6), is **DENIED**.

Dated at Milwaukee, Wisconsin this 23rd day of August, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge